**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONAIR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-09693 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Conair Corporation, ("Conair" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I.  JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Conair's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Conair's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Conair substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Conair to combat online counterfeiters who trade upon Conair's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products using counterfeit versions of Conair's federally registered trademarks (the "Counterfeit Conair Products"). The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Conair products, while actually selling Counterfeit Conair Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Conair Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Conair is forced to file these actions to combat Defendants' counterfeiting of its registered

trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Conair Products over the Internet. Conair has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III.  THE PARTIES

**Plaintiff**

4.      Conair is an internationally recognized leader in the development, manufacturing, and marketing of personal and professional health and beauty products and small household appliances. Conair markets and sells hair dryers, flat irons, curling irons, hot rollers, and other heat styling tools, including, but not limited to, the popular BaBylissPRO, MIRACURL, INFINITI PRO BY CONAIR, CURL SECRET and PERFECT CURL products (collectively referred to as the "Conair Products"). Conair distributes its Conair Products through various channels, including through the official conair-store.com website, through authorized distributors for the professional-grade Conair Products, and through various retailers throughout Illinois and the United States, including, but not limited to, professional beauty supply stores such as Ulta, department stores such as Macy's, and large retail corporations such as Target and Wal-Mart for the consumer-grade Conair Products.

5.      Conair Products have become enormously popular, driven by Conair's arduous quality standards and innovative designs. Among the purchasing public, genuine Conair Products are instantly recognizable as such. In the United States and around the world, Conair's brands have come to symbolize high quality.

6.      Conair incorporates a variety of distinctive marks in the design of its various Conair Products. As a result of its long-standing use, Conair owns common law trademark rights

in its BaBylissPRO, MIRACURL, CONAIR, INFINITI PRO BY CONAIR, CURL SECRET,

PERFECT CURL and other trademarks. Conair has also registered its trademarks with the

United States Patent and Trademark Office. Conair Products typically include at least one of

Conair's registered trademarks. Often several of Conair's marks are displayed on a single

product. Conair uses its trademarks in connection with the marketing of its Conair Products,

including the following federally registered marks, which are collectively referred to as the

"CONAIR Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 994,007 | CONAIR | September 24, 1974 | For: Electric hair dryers, electric curling irons in class 011. |
| 1,032,163 | CONAIR | February 3, 1976 | For: Electric hair dryers, electric hot combs, electric curling irons, and electric pressing combs in class 011.<br><br>For: Hair brushes in class 021. |
| 1,148,225 | BaByliss | March 10, 1981 | For: Electric hair styling apparatus-namely, electric hair straightener, electric styling irons, electric brushes and electric styling combs in class 009. |
| 2,248,614 | CONAIR | June 1, 1999 | For: Electrical and/or battery-operated shavers, clippers and trimmers, and non-electrical hand operated shears in class 008.<br><br>For: Electrical curling brushes, electrical hair curling irons, electrical |

4

| | | | heated hair rollers and hair setters in class 009.<br><br>For: Electrical and/or battery-operated massagers and electrical heating pads in class 010.<br><br>For: Electrical lighted make-up mirrors in class 020.<br><br>For: Hair brushes, hair combs, hair rollers, hair styling implements, namely, and electrical and non-electrical toothbrushes in class 021. |
|---|---|---|---|
| 3,176,276 | BABYLISS PRO TT | November 28, 2006 | For: Hair appliances, namely hair dryers in class 011. |
| 3,331,036 | BABYLISS PRO TT | September 12, 2006 | For: Hair appliances, namely, electric hair curling irons and electric hair straighteners in class 009. |
| 3,513,454 | BABYLISS | October 7, 2008 | For: Hand-held electric hair dryers in class 011. |
| 3,513,456 | BABYLISS | October 7, 2008 | For: Hair brushes; hair combs in class 021. |
| 3,825,111 | BABYLISS PRO XCLUSIVE | July 27, 2010 | For: Electric hand-held hair styling irons in class 009.<br><br>For: Hand-held electric hair dryers in class 011. |
| 4,042,126 | BABYLISS | October 18, 2011 | For: Electric hair curlers in class 009. |

| 4,246,825 | BABYLISS FOR MEN | November 20, 2012 | For:  Hair clippers; hair trimmers; mustache and beard trimmers in class 008. |
|---|---|---|---|
| 4,272,256 | INFINITI PRO BY CONAIR | January 8, 2013 | For: Electric irons for styling hair in class 008.<br><br>For: Electric hair dryers in class 011.<br><br>For: Electrically heated hair brushes in class 021. |
| 4,365,347 | MIRACURL | July 9, 2013 | For: Electric hair curling irons in class 008.<br><br>For: Electric hair curlers in class 026. |
| 4,400,184 | INFINITI PRO BY CONAIR | September 10, 2013 | For: Electric hair curlers, other than hand implements; Electric hair rollers in class 026. |
| 4,399,723 | INFINITI PRO BY CONAIR | September 10, 2013 | For: Hair brushes in class 021. |
| 4,464,104 | CURL SECRET | January 7, 2014 | For: Electric irons for styling hair in class 008. |
| 4,561,367 | BABYLISSPRO | July 1, 2014 | For: Electric hair trimmers; hair clippers; electric hair curling irons; electric hair straightening irons; electric hand-held hair styling irons in class 008.<br><br>For: Electric hair dryers in class 011.<br><br>For: Hair brushes in class 021. |

| 4,649,356 | PERFECT CURL | December 2, 2014 | For: Electronic hand-held hair styling irons in class 008. |
| 4,693,394 | HAIR GOES IN CURL COMES OUT | February 24, 2015 | For: Electric hair curling irons in class 008. |

7.     The above U.S. registrations for the CONAIR Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CONAIR Trademarks constitute *prima facie* evidence of their validity and of Conair's exclusive right to use the CONAIR Trademarks pursuant to 15 U.S.C. § 1057(b). The CONAIR Trademarks have been used exclusively and continuously by Conair and its predecessors in interest, some since at least as early as 1963, and have never been abandoned. Conair has devoted substantial resources to promoting the goodwill of the CONAIR Trademarks. As a result, the CONAIR Trademarks have become famous and serve to symbolize Conair and its reputation as an industry leader among stylists and hair care enthusiasts. True and correct copies of the United States Registration Certificates for the above-listed CONAIR Trademarks are attached hereto as **Exhibit 1**.

8.     The CONAIR Trademarks are exclusive to Conair, and are displayed extensively on Conair Products and in Conair's marketing and promotional materials. Conair has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting the CONAIR Trademarks. As a result, products bearing the CONAIR Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Conair. Conair Products are among the most popular of their kind in the world. Because of Conair's advertising and promotional efforts and

its continuous use of the CONAIR Trademarks for many years, Conair has attained one of the highest levels of recognition among professional health and beauty brands in the United States, and the CONAIR Trademarks have become famous marks.

9.      The CONAIR Trademarks are distinctive when applied to the Conair Products, signifying to the purchaser that the products come from Conair and are manufactured to Conair's quality standards.  Whether Conair manufactures the products itself or licenses others to do so, Conair has ensured that products bearing its trademarks are manufactured to the highest quality standards.  The CONAIR Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks.  As such, the goodwill associated with the CONAIR Trademarks is of incalculable and inestimable value to Conair.

10.     Conair's innovative marketing and product designs have enabled Conair to achieve widespread recognition and fame and have made the CONAIR Trademarks some of the most well-known marks in the professional beauty industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the CONAIR Trademarks have made the marks valuable assets of Conair.

11.     Conair has used the CONAIR Trademarks on and in connection with the advertising and sale of a wide variety of hair styling tools, including, but not limited to, the Conair Products.  Conair has sold and advertised its goods in interstate and intrastate commerce, including commerce in the State of Illinois, and in this judicial district.  As a result of their widespread use, these trademarks have become a symbol of high-quality, professional styling tools and are synonymous with Conair.  The CONAIR Trademarks are inherently distinctive or have acquired secondary meaning and, as such, have come to be known as source identifiers for authentic Conair Products.

**The Defendants**

12.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Conair Products to consumers within the United States, including the State of Illinois.

13.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the CONAIR Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Conair to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Conair will take appropriate steps to amend the Complaint.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

14.     The success of Conair's brands has resulted in their significant counterfeiting. Consequently, Conair has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Conair has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay,

9

AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Conair Products to consumers in this Judicial District and throughout the United States. Despite Conair's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

15. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the CONAIR Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Conair has not licensed or authorized Defendants to use any of the CONAIR Trademarks, and none of the Defendants are authorized retailers of genuine Conair Products.

16. Many Defendants also deceive unknowing consumers by using the CONAIR Trademarks without authorization within the content, text, and/or meta tags of their websites in

order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Conair Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Conair Products. Other Defendants only show the CONAIR Trademarks in product images, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for CONAIR Products.

17.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

18.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Conair Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one

11

another, suggesting that the Counterfeit Conair Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Conair's official conair.com, curlsecret.com, miracurlpro.com and babylissus.com websites.

19. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

20. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Conair's enforcement efforts. On information and belief,

Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

21.     Defendants, without any authorization or license from Conair, have knowingly and willfully used and continue to use the CONAIR Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Conair Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Conair Products into the United States, including Illinois.

22.     Defendants' use of the CONAIR Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Conair Products, including the sale of Counterfeit Conair Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Conair.

### COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

23.     Conair hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 22.

24.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CONAIR Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CONAIR Trademarks are highly distinctive marks. Consumers have

come to expect the highest quality from Conair Products offered, sold or marketed under the CONAIR Trademarks.

25.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the CONAIR Trademarks without Conair's permission.

26.     Conair is the exclusive owner of the CONAIR Trademarks.  Conair's United States Registrations for the CONAIR Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Conair's rights in the CONAIR Trademarks, and are willfully infringing and intentionally using counterfeits of the CONAIR Trademarks.  Defendants' willful, intentional and unauthorized use of the CONAIR Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Conair Products among the general public.

27.     Defendants'   activities   constitute   willful   trademark   infringement   and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

28.     Conair has no adequate remedy at law, and if Defendants' actions are not enjoined, Conair will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CONAIR Trademarks.

29.     The injuries and damages sustained by Conair have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Conair Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

30.     Conair hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29.

31.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Conair Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Conair or the origin, sponsorship, or approval of Defendants' Counterfeit Conair Products by Conair.

32.     By using the CONAIR Trademarks on the Counterfeit Conair Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Conair Products.

33.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Conair Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34.     Conair has no adequate remedy at law and, if Defendants' actions are not enjoined, Conair will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
### CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE CONAIR TRADEMARKS

35.     Conair hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34.

36.     Conair is the exclusive owner of the CONAIR Trademarks.  The U.S. Registrations for the CONAIR Trademarks (Exhibit 1) are in full force and effect.  Additionally, the CONAIR Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

15

37.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the CONAIR Trademarks have acted with bad faith intent to profit from the unauthorized use of the CONAIR Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the CONAIR Trademarks.

38.     Defendants have no intellectual property rights in or to the CONAIR Trademarks.

39.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

40.     Conair has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating any of the CONAIR Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Conair.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

41.     Conair hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

42.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Conair Products as those of Conair; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Conair Products; representing that their Counterfeit Conair Products have Conair's approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

16

43.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

44.     Conair has no adequate remedy at law, and Defendants' conduct has caused Conair to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Conair will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Conair prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the CONAIR Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Conair Product or is not authorized by Conair to be sold in connection with the CONAIR Trademarks;

   b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Conair Product or any other product produced by Conair that is not Conair's or not produced under the authorization, control, or supervision of Conair and approved by Conair for sale under the CONAIR Trademarks;

   c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Conair Products are those sold under the authorization, control, or supervision of Conair, or are sponsored by, approved by, or otherwise connected with Conair;

17

d.  further infringing the CONAIR Trademarks and damaging Conair's goodwill;

e.  otherwise competing unfairly with Conair in any manner; and

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Conair, nor authorized by Conair to be sold or offered for sale, and which bear any of Conair's trademarks, including the CONAIR Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, at Conair's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Conair, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Conair's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Conair's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3)  Entry of an Order that, upon Conair's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and

other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the CONAIR Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CONAIR Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Conair all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CONAIR Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Conair be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CONAIR Trademarks and $100,000 per domain name incorporating any of the CONAIR Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That Conair be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 13th day of October 2016.     Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Attorneys for Plaintiff Conair Corporation*